JOHN T. GORMAN
Federal Public Defender
First Hawaiian Bank Building
400 Route 8, Suite 501
Mongmong, Guam 96910
Telephone: (671) 472-7111
Facsimile: (671) 472-7120

Attorney for Defendant
JOHNNIE FORTNER

FILED
DISTRICT COURT OF GUAM
DEC - 3 2007
JEANNE G. QUINATA
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR 07-00095 |
| ) | |
| Plaintiff, ) | MOTION TO SUPPRESS EVIDENCE |
| ) | |
| vs. ) | |
| ) | |
| JOHNNIE FORTNER, ) | |
| ) | |
| Defendant. ) | |

COMES NOW the defendant, JOHNNIE FORTNER, through counsel, John T. Gorman, Federal Public Defender, and moves this Honorable Court to suppress physical evidence seized and statements made by her during the investigation of this case.

This motion is based upon the Fourth Amendment to the United States Constitution, the following memorandum of law and upon evidence which may be adduced at the evidentiary hearing to be held on this matter.

### STATEMENT OF FACTS

On October 9, 2007, at approximately 12:40 a.m., Guam Police Department (GPD) officers Benny Babauta and Sgt. James Santos stopped a Ford Explorer being driven by a man identified as Kelly Francisco. The officers found a methamphetamine pipe and approximately .1

gram of methamphetamine in the car and Francisco was arrested. While at GPD's Hagatna precinct, Francisco was told by GPD officers to call and have his belongings picked up. GPD officers dialed the telephone number given to them by Franciso. Sgt. Santos eavesdropped on Francisco's telephone call and heard Francisco say that he had been arrested for drugs and that someone should come pick up his belongings at the precinct. Sgt. Santos believed Francisco's words were a code to destroy evidence at the Francisco residence, on Blas Road in Mangilao. Sgt. Santos then drove to Blas Road in Mangilao and began surveillance. Sgt. Santos saw a gray Mazda Miata arrive at what he believed to be the Francisco residence.

GPD officer Joel Verango, was on patrol in the Mangilao area. At approximately 4:45 a.m., approximately 20 minutes after the Miata arrived, Verango received a radio call from his field supervisor, Sgt. Santos, to stop the Miata which had left a residence on Blas Road and was traveling westbound on Dairy Road towards Maimai Road. Verango was told that the Miata's rear license plate was not properly illuminated. Officer Verango spotted the Miata on Maimai Road and believed the car was straddling on the roadway into the oncoming lane. Officer Verango pulled the Miata over by South Diaz Road, Chalan Pago and approached the driver.

The driver was Joshua Jerome C. Ulloa. Officer Verango told Ulloa why he had pulled him over. Ulloa stated that he was straying into the oncoming lane to avoid the speed bumps. Sgt. Santos joined Verango at the scene. Verango believed Ulloa was acting suspicious by avoiding eye contact and looking at the passenger floor board. Verango ordered Ulloa from the car and did a pat-down search. No weapons or guns were found. Sgt. Santos then confronted Ulloa and asked him how he was doing. Ulloa said he was fine. There were also two female passengers in the front seat of the Miata. Sgt. Santos asked them their names. The middle passenger identified herself as

2

Christine Duenas. The passenger on the left identified herself as Johnnie R. Rosario.[1] Officer Verango believed Duenas to be acting suspiciously due to nervous shaking of her legs. Officer Verango also believed Fortner was acting suspiciously as her right leg and hands were also shaking. Both females were ordered out of the car. Fortner then allegedly yelled, "F**k you guys" and was handcuffed and placed in a police car.

Officer Verango and Sgt. Santos then asked Ulloa for permission to search the car and his person for any weapons or illegal drugs and he consented. Ulloa then told the officers that he owned nothing in the Miata's trunk and that everything in the Miata's trunk belonged to Fortner.

Guam police officers then opened the Miata's trunk. A large bag and two purses were found inside. A methamphetamine pipe was found in one of the purses. A can of Drano and a glass cooking pot with a brownish red substance in the bottom of the pot were found in the large bag. All three Miata passengers were arrested and the contents of the trunk were seized. Subsequent investigation led to the seizure of illegal drugs and numerous pieces of evidence believed to constitute a illegal methamphetamine laboratory.

## MEMORANDUM OF LAW

### THE MIATA'S DRIVER, ULLOA, DID NOT HAVE THE AUTHORITY TO CONSENT TO THE SEARCH OF HIS PASSENGER, FORTNERS, PURSES AND BAG.

The search and seizure of Fortner's purses and bag was unsupported by reasonable suspicion or probable cause and was conducted without her consent and must be suppressed. Additionally, evidence seized during the subsequent investigation must also be suppressed as it as

---

[1] Johnnie Rosario is also known as Johnnie Fortner, the defendant here. Rosario is Fortner's maiden name.

3

it was derived from the initial illegality and constitutes fruits of the poisonous tree. Wong Sun v. United States, 371 U.S. 471 (1963). When the police make a traffic stop, a passenger in the car, like the driver, is seized for Fourth Amendment purposes and so may challenge the stop's constitutionality. Brendlin v. California, 127 S.Ct. 2400 (2007).

The issue here is whether a third party, Ulloa, can consent to a search of a passenger, Fortner's, purses and bag located in the trunk of the Miata. The government has the burden of establishing the effectiveness of a third party's consent. Illinois v. Rodriquez, 497 U.S. 177 (1990). A driver of a car stopped by a police officer for an apparent traffic violation has no authority to consent to a search of a passenger's suitcases found in the trunk, after the driver has told the officer that the suitcases are not his, such a search is not justified on the basis of the driver's general consent to a search of the car. United States v. Jaras, 86 F.3d 383 (5th Cir. 1996).

The government can attempt to prove the effectiveness of Ulloa's consent to search Fortner's belongings in three ways. First, the government can present persuasive evidence of both shared use and joint access to or control over a searched area, which would demonstrate actual authority to consent. Second, it can show that the owner of the property to be searched has expressly authorized a third party to give consent to the search. Finally, it may establish consent by means of the "apparent authority doctrine." United States v. Welch, 4 F.3d 761, 764 (9th Cir. 1993).

However, the government cannot meet its burden of proving effective third party consent as Ulloa had no authority to authorize the search of Fortner's purses and bag. In fact, Ulloa never gave the police permission to look in Fortner's purses and bag. There is no evidence that Ulloa had actual authority. There is also no evidence that Fortner expressly authorized Ulloa to consent to the search. Finally, there is no evidence that Ulloa had "apparent authority to consent to

4

the search. It is important to note also that the police have a duty of inquiry when relying on a third party's apparent authority. United States v. Reid, 226 F.3d 1020, 1025-26, (9th Cir. 2000). Tellingly, the police officers here made no inquiry as to Ulloa's consent.

Ninth Circuit caselaw supports Fortner's position. In United States v. Davis, 332 F.3d 1163, 1170 (9th Cir. 2003), the Ninth Circuit found police officers had no apparent authority to search belongings where the lessee identified a houseguest's belongings in a gym bag under the bed. *See also* United States v. Fultz, 146 F.3d 1102, 1106-06, (9th Cir. 1998) ( a homeowner had neither actual or apparent authority to consent to the search of cardboard boxes stored in her garage by a homeless person). In United States v. Welch, 4 F.3d 761, 765 (9th Cir. 1993) *overruled in part on other grounds by United States v. Kim*, 105 F.3d 1579, 1581 (9th Cir. 1997), the court held the consent given by the defendant's boyfriend to search the defendant's purse, which was located in a car they had joint control over, was invalid because the information known at the time did not support a reasonable belief in the boyfriend's authority to consent.

For all of the above reasons and because the government cannot carry its burden of demonstrating that the consent to search Fortner's purses and bag was valid, that evidence must be suppressed. The evidence seized in the subsequent investigation must also be suppressed as it constitutes fruits of the poisonous tree.

DATED: Mongmong, Guam, December 3, 2007.

JOHN T. GORMAN
Attorney for Defendant
JOHNNIE FORTNER

## DECLARATION OF COUNSEL RE MOTION TO SUPPRESS EVIDENCE

I, JOHN T. GORMAN, hereby declare as follows:

1. That I am counsel for defendant, JOHNNIE FORTNER, having been appointed pursuant to the Criminal Justice Act.

2. That the facts and statements set forth in the foregoing document are true and correct to the best of my knowledge and belief.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

DATED: Mongmong, Guam, December 3, 2007.

_____
JOHN T. GORMAN
Attorney for Defendant
JOHNNIE FORTNER

## CERTIFICATE OF SERVICE

I, ALEXANDER A. MODABER, hereby certify that a true and exact copy of the foregoing document was filed with U.S. District Court and electronically served by the U.S. District Court Clerk's Office to the following on December 3, 2007:

ROSETTA SAN NICOLAS
Assistant United States Attorney
Sirena Plaza
108 Hernan Cortez, Ste. 500
Hagatna, Guam 96910

Attorney for Plaintiff
UNITED STATES OF AMERICA

ROSSANNA VILLAGOMEZ-AGUON
U.S. Probation Officer
U.S. Probation Office
Districts of Guam and NMI
2nd Floor, U.S. District Court

DAVID J. LUJAN
Lujan, Aguigui & Perez, LLP
Pacific News Building
238 Archbishop Flores Street
Suite 300
Hagatna, Guam 96910

Attorney for Defendant
KELLY FRANCISCO

DATED: Mongmong, Guam, December 3, 2007.

ALEXANDER A. MODABER
Investigator