LEONARDO M. RAPADAS
United States Attorney
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney
Sirena Plaza Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for United States of America

☐ ORIGINAL

**FILED**
DISTRICT COURT OF GUAM

DEC 10 2007

JEANNE G. QUINATA
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHNNIE FORTNER,<br><br>Defendant. | CRIMINAL CASE NO. 07-00095<br><br>**UNITED STATES' OPPOSITION TO MOTION TO SUPPRESS** |

Comes now the plaintiff, United States of America, by and through its undersigned attorney, and moves this Honorable Court to deny the defendant's Motion to Suppress.

This Opposition is based on the following memorandum of points and authorities, the record in the Court's file, and any oral arguments or evidence that may be produced at the hearing in this matter.

Respectfully submitted this 10th day of December, 2007.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF FACTS

On October 9, 2007, Sargent James Santos and Officer Benny Babauta pulled over Kelly Francisco's Ford Explorer pulled over for a traffic stop. Police found approximately .1 gram of methamphetamine. At the precinct, Francisco was permitted to make a telephone call to arrange the pickup of his personal items. He called his girlfriend Johnnie Fortner who was at his Mangilao residence. Sargent Santos believed that Francisco called Fortner to warn her.

After learning that her boyfriend Kelly Francisco was arrested, defendant Fortner contacted Joshua Ulloa to pick her up. She instructed Ulloa to drive to the rear of the residence to avoid being seen from the roadway. Both Fortner and Ulloa cleared the residence of any evidence of a clandestine lab by placing glass beakers and chemicals into trash bags. Ulloa dumped the trash bags behind Fortner's house. Both Fortner and Ulloa jointly placed a bag containing a burner, chemicals, and glass containers into the trunk of Ulloa's car. The burner was still hot to the touch from the interrupted "cooking" of methamphetamine. Ulloa, Christine Duenas, and Fortner then got into the car and drove off.

Sargent Santos rode his police motorcycle to Dairy Mart and parked. He saw a Miyata drive down Blas Street and pull into Francisco and Fortner's residence. Meanwhile, Officer Joel Verango was patrolling in the area in a police cruiser. He observed the Miyata driving along Dairy Road and saw that the car was swerving, lane straddling and that there were no lights illuminating the license plate. Believing that the driver was driving under the influence of alcohol, he pulled the Miyata over.

Officer Verango approached the driver of the Miyata. As he spoke with the driver, he observed that the driver did not make eye contact, instead kept looking at the passenger floorboard of the car. Officer Verango also observed a female on the center

2

console and another female on the passenger side of the Miyata. Sargent Santos identified the driver as Joshua Ulloa. Officer Verango observed that the both female passengers in the car were acting nervously - the middle passenger's leg shook, the hands and leg of the passenger on the right were visibly shaking. The middle passenger identified herself to be Christine Duenas. The right passenger identified herself as "Johnnie Rosario". Johnnie Rosario and Christine Duenas were instructed to step out of the car, both were cuffed and patted down for safety. Johnnie Fortner was visibly agitated.

Officer Verango asked the driver Joshua Ulloa for his consent to search the car for weapons or drugs, in his vehicle or on his person. Joshua Ulloa consented to the search of his person and the car and permitted Officer Verango to search the trunk of the car. Ulloa stated "everything in the trunk belongs to Johnnie."

Sargent Santos opened the trunk of the car. He saw a large bag and immediately placed his hand on it and noted it felt "hot." The trunk contained a cooking pot and chemicals consistent with the manufacture of methamphetamine.

## ARGUMENT

### I. CONSENT TO SEARCH EXTENDS TO ALL CONTAINERS IN THE CAR

The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. Const. amend. IV, Minnesota v. Dickerson, 508 U.S. 366 (1993) citing Mapp v. Ohio, 367 U.S. 643 (1961). "Time and time again, this Court has observed that searches and seizures "'conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment - subject only to a few specifically established and well delineated exceptions. Dickerson, 508 U.S. 366, 372. "We have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." Schneckloth v.

Bustamante, 412 U.S. 218, 219 (1973).

It is reasonable for Officer Verange to consider a suspect's general consent to a search of his car to include consent to examine the trunk and contents within the containers.

In Florida v. Jimeno, 500 U.S. 248 (1991), Jimeno was pulled over after the commission of a traffic infraction. The Officer asked for consent to search for narcotics in a car. Jimeno consented to the search. Two passengers stepped out of the car and the Officer searched. On the passenger side of the car, the Officer found a bag which contained cocaine.

Jimeno argued that his consent did not extend to the closed bag in the car and that the owner of the bag must specifically consent to the search of that bag. The Supreme Court granted certiorari to determine whether consent to search a vehicle may extend to closed containers found inside the vehicle.

The U.S. Supreme Court held that a driver's consent to search extends to containers within the car. The Supreme Court held:

> "The scope of the search is generally defined by its expressed object. United States v. Ross, 456 U.S. 798, 102 S. Ct. 2157 (1982). In this case, the terms of the search's authorization was simple. Respondent granted Officer Trujillo permission to search his car, and did not place any explicit limitation on the scope of the search. Trujillo had informed respondent that he believed respondent was carrying narcotics, and that he would be looking for narcotics in the car. **We think that it was objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container.** "Contraband goods rarely are strewn across the trunk or floor of a car." Id, at 820, 102 S. Ct. 2170. The authorization to search in this case, therefore, extended beyond the surfaces of the car's interior to the paper bag lying on the car's floor." Jimeno, at 252.

Like in Jimeno, search of the car reasonably extends to containers which may contain firearms or contraband.

Respondent raised the argument that Police must separately request permission to

4

search each container. The Supreme Court held:

> "[W]e see no basis for adding this sort of superstructure to the Fourth Amendment's basic test of objective reasonableness. Cf. <u>Illinois v. Gates</u>, 462 U.S. 213, 103 S. Ct. 2317 (1983). A suspect may of course delimit as he chooses the scope of the search to which he consents. But is his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization. "The community has a real interest in encouraging consent, for the resulting search may yield necessary evidence for the solution and prosecution of crime, evidence that may insure that a wholly innocent person is not wrongly charged with a criminal offense. <u>Schneckloth v. Bustamante</u>, supra, at 243, 93 S. Ct. At 2056.

Like the Officer in <u>Jimeno</u>, Officer Verango informed the driver that he would be searching for weapons or drugs in his vehicle or on his person. Ulloa consented to this search. It is objectively reasonable for Officers to search for weapons or drugs in the car, in the trunk, or in any containers within the trunk. Bags and purses are likely places where firearms or drugs are likely to be kept. A reasonable person may be expected to know that narcotics are generally carried in some form of container. There is no basis to impose a requirement that the Officers obtain consent for each and every container in the car. This would impose a "superstructure" on the Fourth Amendment's basic test of reasonableness. The Officer informed Ulloa of the object of the search, where he wished to search for those items, and was granted consent. Ulloa did not place any explicit limitation on the scope of the search.

## II. THE DRIVER HAD "ACTUAL AUTHORITY" TO CONSENT TO A SEARCH OF THE ENTIRE VEHICLE.

The Supreme Court in <u>Florida v. Jimeno</u>, 111 S. Ct. 1801 (1991) has held that consent to search extends to containers in the car and that Officers need <u>not</u> obtain separate permission to search each container.

Defendant Fortner, however, argues that Ulloa lacked "actual authority" to consent to the search of the containers in the trunk which belonged to his passenger Fortner.

"It is settled for purposes of the Fourth Amendment that except in certain carefully

5

defined classes of cases, a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant." Mancusi, 392 U.S. at 320. "One well-settled exception is where valid consent is obtained by the government." Davis v. United States, 328 U.S. 582 (1946). "In proving voluntary consent, the government "is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises." United States v. Ziegler, 474 F3d 1184, 1191 (9th Cir. 2007), citing United States v. Matlock, 415 U.S. 164, 171 (1974), United States v. Davis, 332 F.3d 1163, 116809 (9th Cir. 2003). In Matlock, the Supreme Court has held "Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements . ... but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." Matlock, 415 U.S. at 993. "Common authority to authorize a search rests upon the premise that one "[has] assumed the risk that one of [his] number might permit the common area to be searched." Matlock, 415 U.S. at 171. "A finding of actual authority requires proof that the consenting party and the party challenging the search "mutually used the property searched and had joint access to and control of it for most purposes, so that it is reasonable to recognize that either user had the right to permit inspection of the property and that the complaining co-user might permit the search." U.S. v. Jaras, 86 F3d. 383 (5th Cir. 1996). "A third party has actual authority to consent to a search of a container if the owner of the container has expressly authorized the third party to give consent or if the third party has mutual use of the

6

container and joint access to or control over the container." U.S. v. Fultz, 146 F.3d 1102, 1105 (9th Cir. 1998).

Driver Joshua Ulloa voluntarily consented to a search of the entire vehicle and had actual authority to consent to a search of the trunk. Illinois v. Rodriguez, 497 U.S. 177, 186-7 (1990), Matlock, 415 U.S. at 169-70. Fortner and Ulloa mutually used the car searched and had joint access to and control of the car. Ulloa had the right to permit inspection of the car to include the trunk space which contained Fortner's bags. Fortner, the complaining co-user assumed the risk that Ulloa might permit the search.

In this case, after learning that her boyfriend Kelly Francisco was arrested, defendant Fortner contacted Ulloa to pick her up. She instructed Ulloa to drive to the rear of the residence to avoid being seen from the roadway. Both Fortner and Ulloa cleared the residence of any evidence of a clandestine lab by placing glass beakers and chemicals into trash bags. Ulloa dumped the trash bags behind Fortner's house. Both Fortner and Ulloa jointly placed a bag containing a burner, chemicals, and glass containers into the trunk of Ulloa's car. The burner was still hot to the touch from the interrupted "cooking" of methamphetamine. Ulloa, Christine Duenas, and Fortner then got into the car and drove off. The car was stopped by Sgt. Santos and Officer J.P. Verango. After the stop, Police noted that Ulloa was nervous and would not make eye contact. Christine Duenas was visibly shaking her legs and Fortner's legs and hands were also shaking. Johnnie Fortner identified herself as Johnnie Rosario. Officer J.P. Verango asked Ulloa for permission to search the car and his person for any weapons or illegal drugs.

The fact that Ulloa and Fortner both loaded the chemicals for the clandestine methamphetamine lab into the car demonstrates that both Fortner and Ulloa mutually used the property search, had joint access to, and control of the car. It is reasonable to recognize that either Fortner or Ulloa had the right to permit inspection of the trunk of the

7

car. Here, Fortner assumed the risk that the consenting co-user Ulloa permitted the search. There is evidence of joint access to and control over the property found in the car. Both parties worked together cooperatively to clean up the clandestine lab. Ulloa therefore possessed actual authority to permit a search of the bags belonging to Fortner.

### III. THE DRIVER HAD "APPARENT AUTHORITY" TO CONSENT TO A SEARCH OF THE ENTIRE VEHICLE.

If the Court determines that actual authority is absent, the Ninth Circuit has upheld a consensual search under the doctrine of apparent authority. "When actual authority is absent, we will uphold a consensual search under the doctrine of apparent authority if "the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." Reid, 226 F.3d 1030, citing Illinois v. Rodriguez, 497 U.S. 177, 188 (1990). To show apparent authority, the Government must present proof that the searching officers "reasonably (though erroneously) believed that the person who has consented to their search had authority to do so." Illinois v. Rodriguez, 497 U.S. at 186.

The Ninth Circuit has stated an analysis for apparent authority. "The existence of apparent authority entails a three-part analysis. First, did the searching officer believe some untrue fact that was then used to assess the consent-giver's use of and access to or control over the area searched? Second, was it under the circumstances objectively reasonable to believe that the fact was true? Finally, assuming the truth of the reasonably believed but untrue fact, would the consent-giver have actual authority?" United States v. Reid, 226 F.3d 1020, 1026 (9th Cir. 2000).

Applying this test, there is apparent authority justifying the search of the entire vehicle.

First, the searching Officer Verango believed an untrue fact – that Ulloa owned the bags in the trunk – when in truth defendant Fortner now claims ownership of the bags. This untrue fact (that Ulloa owned the bag) was used to assess the consent-giver's use of

8

and access to or control over the area searched. Here, Ulloa as the driver consented to a search of the car for illegal contraband and weapons. The Officers, believing that Ulloa was the true owner, took him at his word and searched the entire car.

Second, under the circumstances, it was objectively reasonable for Officer Verango to believe that Ulloa was telling the truth. Ulloa was the driver of the car, had physical possession of the car, and controlled its destination and its passengers.

Third, assuming that Ulloa truthfully owned the bags in the trunk, he would have actual authority to permit search of the bags in the trunk.

The Officers reasonably believed that Ulloa had the apparent authority to permit search of the bags. They relied on information that Ulloa, as driver of the car authority to consent to a search of the car. At the time of the search, the Officers were told that they had Ulloa's permission to search the entire car for firearms and weapons. The Officers were <u>not</u> on notice that an ownership interest was claimed - i.e. that the bags belonged to Fortner.

The Officers, based their experience and knowledge of Ulloa heard the statement *"All that stuff in the trunk, it's Fortner's."* and analyzed that statement in light of their prior experience with Ulloa. Absent notice from Ulloa that the consent to search did not extend to the bags, the Officers reasonably relied on Ulloa's apparent authority. Ulloa made no statements that would place the Officers on notice that there were any limitations on his ability to consent. At the time of the search of the trunk, the Officers reasonably believed that Ulloa had authority to consent to the search. This is sufficient for actual authority. "The apparent authority doctrine validates a search only where the search would be valid if the facts believed by the officer were true." <u>Dearing</u>, 9 F.3d at 1428-29.

## CONCLUSION

The Supreme Court has held that a general consent to search extends to containers within the car. Office Verango informed Ulloa that he wished to search for firearms and contraband. Ulloa consented to search of the car. The Supreme Court has held that an Officer does not have the obligation to obtain separate consent for each container as this would add a superstructure to the Fourth Amendment's basic test of objective reasonableness. Once consent was granted, the Officers reasonably searched for firearms and contraband where they might reasonably be kept - in bags in the trunk of the car. Additionally, Ulloa had the actual authority to consent to a search of the car because Ulloa and Fortner both shared joint access and control over the bags contained in the trunk. They were in one car together, and he assisted her in dismantling a clandestine methamphetamine laboratory. By sharing joint access and control of the bags, Fortner assumed the risk that Ulloa would consent to search. Additionally, Police Officer Verango reasonably believed that Ulloa, the driver of the car, had the apparent authority to authorize the search of the entire vehicle. The Officers were not placed on notice that Ulloa's consent had any limitations. The Officers had the consent of the driver to search the entire car, they had a right to open the trunk.

Because the search of the entire vehicle was premised on consent, actual or apparent, there is no illegality to be suppressed as "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471 (1963). The Government respectfully requests that defendant's Motion to Suppress be denied.

Dated this __ day of December, 2007.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: Rosetta L. San Nicolas
Asst. U.S. Attorney

10

Case 1:07-cr-00095   Document 34   Filed 12/10/2007   Page 10 of 10