JOHN T. GORMAN
Federal Public Defender
First Hawaiian Bank Building
400 Route 8, Suite 501
Mongmong, Guam 96910
Telephone: (671) 472-7111
Facsimile: (671) 472-7120

Attorney for Defendant
JOHNNIE FORTNER

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 07-00095 |
| | ) | |
| Plaintiff, | ) | OPPOSITION TO MAGISTRATE JUDGE'S |
| | ) | REPORT AND RECOMMENDATION ON |
| vs. | ) | DEFENDANT'S MOTION TO SUPPRESS |
| | ) | |
| JOHNNIE FORTNER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant, JOHNNIE FORTNER, by and through counsel, John T. Gorman, Federal Public Defender, pursuant to Federal Rules of Criminal Procedure 59(a), respectfully objects to the Magistrate Judge's Report and Recommendation on the Fortner's Motion to Suppress Physical Evidence.

### I. FACTUAL BACKGROUND

On October 9, 2007, at approximately 4:40 a.m., Guam Police Department (GPD) Sergeant Santos rode his police motorcycle to Dairy Road in Guam. Santos had been a GPD officer since 1987. He was accompanied by fellow GPD officer, Baubata, who was also on motorcycle. They parked their motorcycles under a overhang at the Dairy Mart, a local business on Dairy Road.

They were there because hours earlier, Kelly Francisco, co-defendant in this case, had been arrested for possession of methamphetamine. Santos had supervised the arrest of Francisco. Santos had later been informed that while in police custody Francisco had called someone believed to be Johnnie Fortner, allegedly his girlfriend. Santos said that arrestees are routinely allowed telephone calls to family and friends. Santos knew that Francisco lived on Blas Street, just off Dairy Road. Santos and Baubata decided to go the vicinity of Francisco's house to "find out what was going on" and "see if there was any activity happening."

Approximately 5 minutes after they arrived at the Dairy Mart, Santos saw a gray Miata drive up Dairy Road and turn down Blas Street toward Francisco's house. Santos noticed that the Miata had a defective rear license plate light, which is a violation of the Guam traffic code. Approximately 20 minutes later, the Miata came up Blas Street and turned onto Dairy Road going west. Santos radioed his subordinate, GPD Officer Verango, who was patrolling in his squad car nearby, and told him to pull the Miata over for the defective license plate light. Within minutes, Verango found and began following the Miata on Dairy Road. Verango noticed the Miata swerved 4 times on Dairy Road to avoid the numerous speed bumps. Verango put on his overhead flashing police lights to pull the Miata over. The driver of the Miata complied immediately and parked by the side of the road. Joshua Ulloa was driving and the two passengers were Christine Duenas and Johnnie Fortner. Officers Santos and Baubata arrived on the scene within minutes of the stop. Ulloa was completely cooperative with the officers but they believed he appeared nervous. Ulloa was removed from the car. He was patted down and no weapons or drugs were found. The passengers, Duenas and Fortner, were also removed from the car. Verango said both passengers appeared to be

2

acting nervous. No weapons or drugs were recovered from Duenas or Fortner and they were placed in separate police cars. Santos knew of Ulloa from a previous narcotics investigation years before. He did not know Fortner and testified he had no experience of Fortner and had never encountered her before.

Verango asked Ulloa if he could search his car and Ulloa said yes. Verango searched the interior and found nothing. Santos then got the keys to the trunk of the car and opened it. Inside the trunk were a number of bags. All of the bags were closed. None of the bags had any identification tags. On the left side of the trunk was dark colored leather like bag with handles and a zipper. (See Exhibit 3, introduced into evidence at the Motion to Suppress hearing). Santos testified that he put his hand on that bag and he felt something hot. Santos said it was not immediately apparent what it was. He unzipped the bag and saw a hot pot and a can of Drano. At that moment, the driver, Ulloa, said nothing in the trunk belonged to him and everything in the trunk belong to Fortner. Santos testified that he was familiar with how methamphetamine is manufactured and that Drano, iodine and other chemicals and burners are used in the production. Santos stopped the search and called for backup for a further search. Santos admitted on cross examination that in the four and half page police report prepared by Verango hours after the search and approved by him, the only description of the search was nowhere as near as elaborate as his testimony. The report stated "While conducting the search, Ulloa voluntarily became cooperative to the both of us and uttered that he owns nothing in the trunk and that everything in the trunk belongs to Johnnie". Subsequent investigation led to the seizure of numerous pieces of evidence allegedly associated with an illegal methamphetamine laboratory.

Fortner filed a Motion to Suppress Evidence on December 3, 2007, alleging the evidence should be suppressed because the driver, Ulloa, did not the authority to consent to the search of. Fortner's luggage.  The Government's opposition was filed on December 10, 2007. Fortner's reply to the Government's opposition was filed on January 11, 2008.  The hearing on the Motion to Suppress was held on January 22, 2008 before the Honorable Magistrate Judge, Joaquin V.E. Manibusan, Jr.  On January 31, 2008, Magistrate Judge Manibusan filed his Report and Recommendation on the Motion to Suppress, recommending that the Motion to Suppress be denied. The Magistrate found that as soon as Ulloa said that the luggage in the trunk was not his the police should have immediately stopped their search.  The Magistrate Judge also found that any further search could be justified however on the basis of probable cause and held there was probable cause for the further search.  The Magistrate Judge noted:

> "Santos knew that Ms. Fortner's boyfriend (Mr. Francisco) had just been arrested a few hours before the search at issue here for possession of methamphetamine. He knew Mr. Francisco had placed a call to Ms. Fortner.  He also knew that Mr. Ulloa was previously involved in a narcotics investigation.  From his experience and training, Sergeant Santos knew that contraband was commonly hidden in vehicles, including the trunk.  He was also aware of the ingredients and equipment used in the manufacturing of methamphetamine, to include items such as Drano and cooking pots. The possession of these everyday items may not cause concern in the average citizen, but given the totality of the circumstances and the training and experience of the officers, the court finds that the police had probable cause to continue searching Ms. Fortner's bags."

Fortner contends Santos' hunch regarding the Drano and cooking pot was not supported by the requisite supporting facts to constitute probable cause and the evidence should be suppressed.

4

## II. THE POLICE OFFICERS DID NOT HAVE PROBABLE CAUSE TO SEARCH FORTNER'S LUGGAGE.

Probable cause is required to justify certain governmental intrusions upon Fourth Amendment interests. The Supreme Court defines probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place. Probable cause to conduct a warrantless search exists when police have, at the moment of arrest, knowledge of facts and circumstances grounded in reasonably trustworthy information and sufficient in themselves to warrant a belief by a prudent that an offense has been or is being committed by the person to be arrested. *See* Beck v. Ohio, 379 U.S. 89, 91 (1964); *see also* Wong Sun v. U.S. 471, 479 (1963) ("It is basic that an arrest . . . must stand upon firmer ground than mere suspicion."). Probable cause is "a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules," and its existence must be determined by an analysis of the totality of the circumstances surrounding the intrusion. Illinois v. Gates, 462 U.S. 213, 232, 238 (1983). The experience of a trained law enforcement agent is entitled to consideration in determining whether there was probable cause. United States v. Arrellano-Rios, 799 F.2d 520, 523 (9th Cir. 1986).

The totality of circumstances here do not constitute probable cause. The magistrate judge relied on the following facts to find probable cause to search Fortner's luggage: (1) Fortner's alleged boyfriend, Francisco, had been arrested a few hours earlier for possession of methamphetamine; (2) Francisco, while at the precinct, had called a person, allegedly Fortner; (3) Ulloa had been involved in a narcotics investigation years earlier; (4) that Santos knew from

5

experience and training that contraband can be hidden in car trunks; and (5) that Santos was aware that everyday items like Drano and cooking pots can be used to manufacture methamphetamine. Any examination of these facts show that even in totality they do not establish probable cause.

The first three factors do little to establish probable cause. Two of the factors do not even involve Fortner. The first is that her alleged boyfriend was arrested for a small amount of methamphetamine hours earlier. Fortner was not even present at Francisco's arrest. Francisco's arrest involved a small amount of methamphetamine. There was nothing about his arrest that suggests Fortner's involvement. There is also absolutely nothing about Francisco's arrest to suggest manufacturing or a methamphetamine laboratory. The second fact is Ulloa was involved in a drug investigation years ago. That it was years ago reduces its persuasiveness. That it was merely an investigation not a conviction further dilutes this fact. We also have no idea if methamphetamine was even the drug involved. Again, Fortner had no involvement with that investigation. The probable cause standard can not be satisfied by dependence on the "dangerous reputation"of a defendant's associates. United States v. Infante-Ruiz, 13 F.3d 498, 502 (9th Cir. 1994). Any weight either of these two factors may have is undercut by the fact that the officers had no experience with Fortner and had never encountered her before.

The third fact relied on by the Magistrate Judge was that Francisco called someone after his arrest, allegedly Fortner. It is routine for those arrested to call their family or friends to inform them of their plight. This is not suspicious or indicative of criminal behavior. The telephone call does nothing to add to the probability that criminal activity is afoot and it simply illogical. The police would not offer telephone calls to arrestees if they thought telephone calls to family and

6

Case 1:07-cr-00095    Document 48    Filed 02/11/2008    Page 6 of 10

friends were criminal or aided criminality.

The fourth factor that Santos knew that contraband is commonly hidden in luggage or car trunks does not aid the case for probable cause. It is the basic nature of contraband that it is hidden. And it can be hidden anywhere, not only in luggage and trunks, but in homes, tents, cars, planes, boats, motorcycles, offices, garages, safes, ceilings, floors, cabinets, cupboards, closets, condoms, bodily orifices, etc, etc, etc. There is nothing about luggage in a car trunk that would lead an objective, reasonable police officer to say, "Ah, there be contraband".

The final fact cited by the Magistrate Judge is the presence of Drano and a cooking pot, which Santos was aware could be used in the cooking of methamphetamine. It is true that Drano and cooking pots can be used in the cooking of methamphetamine. But there is a host of other chemicals, pseudoephedrine, iodine, lye, gasoline, etc and other ingredients and utensils that are essential. This fact is also undercut by the fact that Drano and cooking pots are everyday household items that can be found in nearly every household. Drano and a hot cooking pot without more is not enough to make a reasonable, objective police officer think methamphetamine is being manufactured. The fact that the pot was hot is counterbalanced by the fact that neither officer testified to the strong and telltale chemical odor of a methamphetamine lab or recent cooking. Santos did have approximately 20 years of police experience. But there is no evidence he has had any specialized training or practical experience in methamphetamine labs. It is important to note that none of the other facts support any conclusion regarding a methamphetamine laboratory.

The Magistrate Judge also notes the possession of the everyday items of Drano and a cooking pot "may not cause concern in the average citizen" basically alleging that Fortner is not

7

an average citizen. This statement is not supported by the facts or the law. It is unclear what exactly an average citizen is, but the government certainly never established Fortner was more or less of an average citizen. The fact that the officers had no knowledge of or experience with Fortner makes her seem like your run-of-the-mill, average U.S. citizen with a full complement of Fourth Amendment rights.

Probable cause is considered in the light of the totality of the circumstances. Ornelas v. United States, 517 U.S. 690, 702 (1996). Factors three and four can be easily dismissed as they are so innocent or susceptible to varying interpretations as to be innocuous. Factors one and two deal with Fortner's acquaintances not her and are outweighed by the fact that Fortner was totally unknown to the officers. The final fact is really the only one that merits serious discussion. Clearly, Santos had a hunch about the drano and the cooking pot in Fortner's luggage. But, a hunch or suspicion is not enough for reasonable suspicion, let alone probable cause. Illinois v. Wardlaw, 528 U.S. 119, 123-24 (2000). *See also*, United States v. Wald, 216 F.3d 1222 (10th Cir. 2000), (no probable cause to search car trunk based merely on officer's detection of odor of burnt methamphetamine). Probable cause means more than a bare suspicion, it exists when the officer's knowledge of reasonably trustworthy information is sufficient to warrant a prudent person to believe that an offense has been or is being committed. Brinegar v. United States, 388 U.S. 160, 175-76 (1949). Certainty is not required. But in the absence of supporting facts, the officer's suspicion or personal belief is not enough. Additionally, "[a] search or seizure is ordinarily unreasonable in the absence of *individualized* suspicion of wrongdoing. City of Indianapolis v. Edmond, 531 U.S. 32, 37 (2000). (emphasis added). The Magistrate Judge did not give adequate weight to what the Fourth

8

Amendment requires, that the court place *individualized* suspicion at the heart of the probable cause assessment.

**III.   CONCLUSION.**

For all of the above reasons, Fortner respectfully requests this Court disregard the Magistrate Judge's Report and Recommendation and suppress all physical evidence seized as the search of Fortner's luggage was unsupported by probable cause.

DATED: Mongmong, Guam, February 11, 2008.



_____
JOHN T. GORMAN
Attorney for Defendant
JOHNNIE FORTNER

## CERTIFICATE OF SERVICE

I, JOHN T. GORMAN, hereby certify that a true and exact copy of the foregoing document was electronically filed with U.S. District Court and electronically served by the U.S. District Court Clerk's Office to the following on February 11, 2008:

ROSETTA SAN NICOLAS
Assistant United States Attorney
Sirena Plaza
108 Hernan Cortez, Ste. 500
Hagatna, Guam 96910

Attorney for Plaintiff
UNITED STATES OF AMERICA

DATED: Mongmong, Guam, February 11, 2008.



*John T. Gorman*
Federal Public Defender
District of Guam
Phone: (671) 472-7111
Facsimile: (671) 472-7120
GMT + 10:00 Hours

JOHN T. GORMAN
Attorney for Defendant
JOHNNIE FORTNER