LEONARDO M. RAPADAS
United States Attorney
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney
Sirena Plaza Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

☐ ORIGINAL

**FILED**
DISTRICT COURT OF GUAM

MAR 3 1 2008

JEANNE G. QUINATA
Clerk of Court

Attorneys for United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| UNITED STATES OF AMERICA, | ) CRIMINAL CASE NO. 07-00095 |
|---|---|
| Plaintiff, | ) |
| vs. | ) **UNITED STATES' RESPONSE TO DEFENDANT'S OPPOSITION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |
| JOHNNIE FORTNER, | ) |
| Defendant. | ) |

Comes now the plaintiff, United States of America, by and through its undersigned attorney, and respectfully moves this Honorable Court to adopt the Magistrate Judge's Report and Recommendation re: Motion to Suppress.

Respectfully submitted this 31st day of March 31, 2008.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney

# MEMORANDUM OF POINTS AND AUTHORITIES
## STATEMENT OF FACTS

### Traffic Stop of Kelly Francisco

On October 9, 2007, Sargent James Santos and Officer Benny Babauta pulled over Kelly Francisco's Ford Explorer pulled over for a traffic stop. Police found approximately .1 gram of methamphetamine. At the precinct, Francisco was permitted to make a telephone call to arrange the pickup of his personal items. He called his girlfriend Johnnie Fortner who was at their Mangilao residence. Sargent Santos believed that Francisco called Fortner to warn her. Sargent Santos believed at this point that a crime was being committed. He drove his motorcycle to Dairy Mart, located along Dairy Road, Mangilao and parked on the main drive near Francisco's residence.

After learning that her boyfriend Kelly Francisco was arrested, defendant Fortner contacted Joshua Ulloa to pick her up. Ulloa drove to the rear of the residence. (It was later learned from Ulloa that both Fortner and Ulloa cleared the residence of any evidence of a clandestine lab by placing glass beakers and chemicals into trash bags. Ulloa dumped the trash bags behind Fortner's house.) At the time that Sargent Santos waited at the Dairy Mart store, both Fortner and Ulloa placed a bag containing a burner, chemicals, and glass containers into the trunk of Ulloa's car. (After the pullover, Sargent Santos noted that the burner was still hot to the touch, possibly from the interrupted "cooking" of methamphetamine.) Ulloa, Christine Duenas, and Fortner then got into the car and drove off.

### Traffic Stop of Joshua Ulloa

Sargent Santos rode his police motorcycle to Dairy Mart and parked. He saw a Miyata drive down Blas Street and pull into Francisco and Fortner's residence. Meanwhile, Officer Joel Verango was patrolling in the area in a police cruiser. He observed the Miyata driving along Dairy Road and saw that the car was swerving, lane

2

straddling and that there were no lights illuminating the license plate. Believing that the driver was driving under the influence of alcohol, he pulled over the Miyata.

Officer Verango approached the driver of the Miyata. As he spoke with the driver, he observed that the driver did not make eye contact, instead kept looking at the passenger floorboard of the car. Officer Verango also observed a female on the center console and another female on the passenger side of the Miyata. Sargent Santos identified the driver as Joshua Ulloa. Officer Verango observed that the both female passengers in the car were acting nervously - the middle passenger's leg shook, the hands and leg of the passenger on the right were visibly shaking. The middle passenger identified herself to be Christine Duenas. The right passenger identified herself as "Johnnie Rosario". Johnnie Rosario and Christine Duenas were instructed to step out of the car, both were cuffed and patted down for safety. Johnnie Fortner was visibly agitated.

Officer Verango asked the driver Joshua Ulloa for his consent to search the car for weapons or drugs, in his vehicle or on his person. Joshua Ulloa consented to the search of his person and the car and permitted Officer Verango to search the trunk of the car. Ulloa told Sargent Santos to anticipate difficulty opening the trunk as it has been damaged previously.

Sargent Santos opened the trunk of the car. Ulloa then stated "everything in the trunk belongs to Johnnie." Sargent Santos saw a large bag and immediately placed his hand on it and noted it felt "hot." The trunk contained a cooking pot and chemicals consistent with the manufacture of methamphetamine.

On January 31, 2008, Magistrate Judge Joaquin V.E. Manibusan issued a Report and Recommendation re: Motion to Suppress. On February 11, 2008, defendant filed an Opposition to the Magistrate Judge's Report and Recommendation pursuant to Federal Rules of Criminal Procedure Rule 59.

3

# ARGUMENT

## I. THE ARGUMENT OF SCOPE OF CONSENT

The Defendant and the Government focused their arguments on the issue of consent - whether Joshua Ulloa (the driver) had the authority to consent to the search of Fortner's bags which were within the trunk of the Miyata.

The Government argued that under that the driver could authorize a search of the car, and that the Officers were permitted to search in closed containers for items of contraband pursuant to Florida v. Jimeno, 500 U.S. 248 (1991), and that pursuant to United States v. Ross, 456 U.S. 798 wherein the Supreme Court held that:

> "The scope of the search is generally defined by its expressed object. United States v. Ross, 456 U.S. 798, 102 S. Ct. 2157 (1982). In this case, the terms of the search's authorization was simple. Respondent granted Officer Trujillo permission to search his car, and did not place any explicit limitation on the scope of the search. Trujillo had informed respondent that he believed respondent was carrying narcotics, and that he would be looking for narcotics in the car. **We think that it was objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container.** "Contraband goods rarely are strewn across the trunk or floor of a car." Id, at 820, 102 S. Ct. 2170. The authorization to search in this case, therefore, extended beyond the surfaces of the car's interior to the paper bag lying on the car's floor." Jimeno, at 252.

The Government also countered that there is no need to obtain separate permission to search each individual container citing Schneckloth v. Bustamante, wherein the Supreme Court held:

> "[W]e see no basis for adding this sort of superstructure to the Fourth Amendment's basic test of objective reasonableness. Cf. Illinois v. Gates, 462 U.S. 213, 103 S. Ct. 2317 (1983). A suspect may of course delimit as he chooses the scope of the search to which he consents. But is his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization. "The community has a real interest in encouraging consent, for the resulting search may yield necessary evidence for the solution and prosecution of crime, evidence that may insure that a wholly innocent person is not wrongly charged with a criminal offense. Schneckloth v. Bustamante, supra, at 243, 93 S. Ct. At 2056.

4

The Government advanced the argument that like the Officer in Jimeno, Officer Verango informed the driver that he would be searching for weapons or drugs in his vehicle or on his person, Ulloa consented to this search, and it is objectively reasonable for Officers to search for weapons or drugs in the car, in the trunk, or in any containers within the trunk. Bags and purses are likely places where firearms or drugs are likely to be kept. A reasonable person may be expected to know that narcotics are generally carried in some form of container. There is no basis to impose a requirement that the Officers obtain consent for each and every container in the car. This would impose a "superstructure" on the Fourth Amendment's basic test of reasonableness. The Officer informed Ulloa of the object of the search, where he wished to search for those items, and was granted consent. Ulloa did not place any explicit limitation on the scope of the search.

## II. THE ARGUMENT OF "ACTUAL AUTHORITY" TO CONSENT TO A SEARCH.

The Government then advanced the argument that Joshua Ulloa had actual authority to consent to search of the car. Defendant Fortner, however, argued that Ulloa lacked "actual authority" to consent to the search of the containers in the trunk which belonged to his passenger Fortner.

The controlling case is United States v. Matlock, 415 U.S. 164, 171 (1974). In Matlock, the Supreme Court has held "Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements . ... but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit

5

the common area to be searched." Matlock, 415 U.S. at 993. "Common authority to authorize a search rests upon the premise that one "[has] assumed the risk that one of [his] number might permit the common area to be searched." Matlock, 415 U.S. at 171. "A finding of actual authority requires proof that the consenting party and the party challenging the search "mutually used the property searched and had joint access to and control of it for most purposes, so that it is reasonable to recognize that either user had the right to permit inspection of the property and that the complaining co-user might permit the search." U.S. v. Jaras, 86 F3d. 383 (5th Cir. 1996). "A third party has actual authority to consent to a search of a container if the owner of the container has expressly authorized the third party to give consent or if the third party has mutual use of the container and joint access to or control over the container." U.S. v. Fultz, 146 F.3d 1102, 1105 (9th Cir. 1998).

The Magistrate Judge ruled that the driver Joshua Ulloa had actual authority over the vehicle, however the Government had failed to prove that there was "mutual use" of the property or "joint access and control" because Ulloa spent a short time at Fortner's residence, did not own the bags, and did not share in their use.

### III. THE ARGUMENT OF "APPARENT AUTHORITY" TO CONSENT TO A SEARCH OF THE ENTIRE VEHICLE.

The next argument the Government advanced was that Ulloa had apparent authority to consent to a search citing the 9th Circuit three part analysis for the doctrine of apparent authority: "The existence of apparent authority entails a three-part analysis. First, did the searching officer believe some untrue fact that was then used to assess the consent-giver's use of and access to or control over the area searched? Second, was it under the circumstances objectively reasonable to believe that the fact was true? Finally, assuming the truth of the reasonably believed but untrue fact, would the consent-giver have actual authority?" United States v. Reid, 226 F.3d 1020, 1026 (9th Cir. 2000).

6

Case 1:07-cr-00095 Document 65 Filed 03/31/2008 Page 6 of 9

Applying this test, the Magistrate Judge held that there Government failed to prove apparent authority justifying the search of the entire vehicle because Ulloa stated to Police that the bags in the trunk belong to Fortner. The Magistrate Judge held that this placed the Officers on notice that his authority to consent to search of Fortner's bags was limited. However, the Magistrate Judge determined that under the probable cause standards of Illinois v. Gates, 462 U.S. 798 (1982), the court may rely on the training and experience of the police officers in his determination of probable cause.

## IV.  THE ILLINOIS V. GATES PROBABLE CAUSE STANDARD

In Illinois v. Gates, 462 U.S. 213, 238 (1982), the Supreme Court defined probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place."

After hearing the testimony, the Magistrate Judge determined that the Officers had probable cause to continue the search of Ms. Fortner's bags because they had the information that after Kelly Francisco was arrested, he made a call to his girlfriend Johnnie Fortner. Sargent Santos believed the call was designed to warn Fortner and place Fortner on notice that he was caught by Police. This fact had a powerful impact on Sargent Santos and Officer Benny Babauta. Sargent Santos and Officer Benny Babauta both drove to the Dairy Road area and parked underneath the overhang at the Dairy Mart, Dairy Road, Mangilao. The Dairy Mart store is next to Blas Street, where Francisco and Fortner reside. Sargent Santos stated "Well, what happened was, I was at the station and I was actually informed that Mr. Francisco actually completed a phone call to Ms. Fortner, so we went up to that area just to basically, in good faith, basically find out what's going on actually, to see if any other activity might be happening."(Transcript of Proceedings, p. 55).   After Sargent Santos saw the Miyata driving down towards Blas Street and returning to Dairy Road, he instructed Officer Verango to pullover the vehicle.

7

The Magistrate Judge had the information that shortly after the call, Ulloa drove up to Fortner's residence and that Fortner, Ulloa and Duenas left the residence. Sargent Santos informed the court that he had prior background information involving Joshua Ulloa - that Ulloa was previously involved in a narcotics investigation two years prior to the pullover (T.P. 58).

The Officers also had their personal background and personal experience knowledge of how contraband is commonly hidden in vehicles, and the common items used to manufacture methamphetamine. Sargent Santos testified that he was personally involved in the arrest of Francisco on October 8, 2007 for methamphetamine or "ice". (T.P. p. 52).

Given these historical facts presented at the Suppression Hearing to the Magistrate Judge, the District Judge must now decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer," amounts to probable cause. Ornelas v. United States, 517 U.S. 690 (1996). The Government contends that it does. Sargent Santos knew that Francisco was arrested, and believed that Francisco called to warn Fortner. At approximately 4:30 in the morning, Sargent Santos drove to Fortner's residence and parked at a nearby store, Dairy Mart. Simultaneously, Officer J.P. Verango pulled over the Miyata for swerving into the oncoming lane four times. The vehicle was pulled over and the Officers noted it was driven by Joshua Ulloa, a person that Sargent Santos knew from prior experience. Ulloa granted consent to search, and the Officers searched. Although Ulloa limited the search of the bags in the trunk, the Officers had probable cause to continue the search - resulting in the discovery of the portable methamphetamine laboratory. Based on a review of these facts, the Magistrate Judge concluded "Accordingly, the court finds nothing illegal in the search of Ms. Fortner's bags or the subsequent investigation that stemmed therefrom."

8

## CONCLUSION

Under the totality of the circumstances, the Magistrate Judge heard the testimony from a law enforcement officer with 7 years of experience and a Sargent with 20 years of experience. Their testimony is certainly entitled to consideration in the probable cause analysis. The Government urges the District Court to adopt the findings of fact and conclusions of law found by the Honorable Joaquin V.E. Manibusan on January 31, 2008.

Dated this 31st day of March, 2008.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: Rosetta L. San Nicolas
Asst. U.S. Attorney