DISTRICT COURT OF GUAM

TERRITORY OF GUAM

**UNITED STATES OF AMERICA**,

    Plaintiff,

vs.

**JOHNNIE FORTNER**,

    Defendant.

**Criminal Case No. 07-00095**

**ORDER RE REPORT AND RECOMMENDATION**

Presently before the court is the defendant's Motion to Suppress. *See* Docket No. 29. This matter was referred to the United States Magistrate Judge Joaquin V.E. Manibusan, Jr. who held an evidentiary hearing on January 22, 2008. The Government's witnesses were Guam Police Officers James T. Santos and Joel P. Verango. The Defendant offered no testimony or other evidence. On January 31, 2008 the Magistrate Judge issued a Report and Recommendation, recommending that Defendant's Motion to Suppress be denied.[1] Thereafter, Johnnie Fortner (the "Defendant") filed an opposition to the report and recommendation. *See* Docket No.48. Under 28 U.S.C. § 636(b)(1) the court shall conduct a *de novo* review of the record and may accept, reject or modify in whole or in part the Magistrate Judge's recommendation. Having thoroughly considered the matter and relevant law and the testimony and evidence presented at the evidentiary hearing, the court hereby **ADOPTS** and **AFFIRMS** the Magistrate Judge's Findings and Recommendations in full and **DENIES** the Defendant's Motion to Suppress.

///

---

[1] *See* January 31, 2008 Report and Recommendation, Doc. No. 47.

## BACKGROUND

On October 17, 2007, Defendant Johnnie Fortner was indicted by a federal grand jury and charged with Conspiracy to Manufacture Methamphetamine and Attempted Manufacture of Methamphetamine. The charges against the Defendant are based on evidence seized by law enforcement officers from the Defendant's belongings that were contained in the trunk of a vehicle in which she was a passenger and evidence seized in the subsequent investigation. The Defendant asks this court to suppress the physical evidence seized and statements made be her during the investigation of this case.

## MOTION TO SUPPRESS HEARING

The following is a summary of the Motion to Suppress hearing conducted before the Magistrate Judge on January 22, 2008.

In the early morning hours of October 9, 2007, the Guam Police Department arrested the co-defendant, Kelly Francisco ("co-defendant") for possession of a controlled substance, namely "ice," and transported him to the Hagåtña Precinct. Sergeant James T. Santos ("Sergeant Santos"), a GPD officer supervised the co-defendant's arrest. Sargent Santos learned that the co-defendant made a made a telephone call to his home, located off of Blas Street in Mangilao, Guam and spoke to his girlfriend, the Defendant. Right after Sargent Santos learned of the phone call, he and fellow officer Benny Babauta rode their police motorcycles to the co-defendant's neighborhood to see if any "activity" was going on at the residence.

The Officers arrived at Dairy Mart, located up the hill from Mr. Francisco's residence, at approximately 4:40 a.m. on October 9, 2007. Because it had just started to rain, they parked their motorcycles under the overhang of Dairy Mart. Sergeant Santos estimated that about five to ten minutes later he noticed a gray Miata drive by and turn left onto Blas Street. Sergeant Santos stated that the Miata caught his attention because its rear license plate light was not illuminated, a violation of Guam law. Sergeant Santos testified that about 15 to 20 minutes later he again saw the Miata leave Blas Street and turn right onto Dairy Road. Sergeant Santos radioed police officer Joel P. Verango ("Officer Verango") and instructed him to pull the vehicle over based on the faulty rear license plate light.

Officer Verango testified that during the early morning hours of October 9, 2007 he was on routine patrol in the Mangilao area when Sergeant Santos radioed him and instructed him told to "check" the gray Miata that was leaving Blas Street and traveling on Dairy Road because it had no operable rear license plate light. Officer Verango understood the instructions to mean that he should pull over the vehicle because of the faulty rear license plate light.

Officer Verango stated that he saw the Miata heading west on Dairy Road toward Maimai Road and noticed that the Miata's rear license plate light was not illuminated. He continued to follow the Miata for approximately one mile. Officer Verango stated that traffic in the area was very light at that time. He observed the Miata swerving into the oncoming lane about four times. Believing that the driver was possibly driving under the influence of alcohol, Officer Verango finally pulled over the vehicle.

Officer Verango approached the driver's side and asked the operator of the vehicle for his driver's license. The driver, identified as Joshua Jerome C. Ulloa gave the Officer his identification card and said the he did not have his driver's license with him. Officer Verango observed two female passengers in the vehicle. Because the vehicle can only seat two passengers, one of the passengers was sitting on the center console. That passenger was later identified as Christine Duenas. The other woman sitting in the passenger seat was later determined to be Ms. Fortner.[2] Officer Verango explained to Mr. Ulloa why he had been pulled over. Mr. Ulloa apologized and told Officer Verango that he was just trying to avoid the speed bumps in the area. Officer Verango testified that he believed all three occupants of the Miata were acting "suspiciously." Mr. Ulloa stuttered as he spoke, avoided making eye contact, and kept looking at the passenger floorboard. Additionally, both female passengers were acting nervously and were observed shaking their legs in an up and down motion and Ms. Fortner's hands were observed shaking.

About a minute or two after the initial pull-over, Sergeant Santos arrived at the scene and walked up to the passenger side of the vehicle. He proceeded to speak with the female passengers while Officer Verango dealt directly with Mr. Ulloa.

---

[2] Ms. Fortner originally used her maiden name and identified herself as "Johnnie Rosario."

Officer Verango then asked Mr. Ulloa to step out of the Miata. They proceeded to the rear of the vehicle, and Officer Verango then conducted a pat-down of Mr. Ulloa's person to check for contraband or weapons. None were found on his person.

At some point thereafter, the passengers were asked to exit the vehicle. Officer Verango and Sergeant Santos testified that Ms. Fortner became upset and belligerent, yelling "f**k you guys." The women were then handcuffed and secured in separate patrol vehicles that had arrived at the scene. Sergeant Santos testified that the female passengers were asked to exit the Miata before they searched the vehicle. Sargent Santos testified that for safety reasons it is common procedure to secure occupants of a vehicle while officers concentrate their attention on the vehicle search.

Officer Verango then asked Mr. Ulloa for permission to search the Miata for any weapons or illegal drugs. Officer Verango testified that he used a normal, conversational tone of voice when asking Mr. Ulloa for consent to search the vehicle. Mr. Ulloa agreed, saying, according to Officer Verango, "yes, go ahead and search." With Mr. Ulloa standing un-handcuffed by the front of the vehicle, Officer Verango proceeded to search the interior of the Miata while Sergeant Santos observed. Officer Verango found no weapons or drugs in the interior of the vehicle.

Officer Verango then asked if he could search the trunk area, and Mr. Ulloa said "sure, go ahead, search." Officer Verango handed the keys to Sergeant Santos. Sergeant Santos knew Mr. Ulloa from a prior narcotics investigation involving Mr. Ulloa. Sergeant Santos asked Mr. Ulloa if he was okay, to which Mr. Ulloa responded he was fine. Before Sergeant Santos opened the trunk, Mr. Ulloa stated that the locking mechanism was broken so there may be a problem in opening the trunk. Sergeant Santos put the key in the lock, and the trunk opened without difficulty.

In the trunk, Sergeant Santos and Officer Verango saw various bags, including a large black bag to the left of the trunk, a large plastic trash bag in the center, and two smaller bags located on the right side of the trunk. *See* Exhibits 3 and 5. All these bags were closed but not locked. None of the bags had identifying tags or marks that indicated who owned them. Sergeant Santos placed his hand on the black bag on the left side of the trunk and felt that it was hot to the touch. Sergeant Santos testified that it was not readily apparent to him after touching the bag what was inside it. He then unzipped the black bag and saw a can of Drano and a hot pot therein. At this point, Mr. Ulloa

stated that he owned nothing in the trunk and everything belonged to Ms. Fortner. Based on his training and experience, Sergeant Santos believed that these items were associated with a "meth lab." Thus, he immediately directed everyone away from area and established a perimeter until the Violent Street Crimes Task Force and the DEA Task Force arrived, so that its "HAZMAT" unit could contain the area.

A thorough search of the bags in the trunk was later conducted. Additionally, all the occupants of the Miata were transported to the Hagåtña Precinct. Mr. Ulloa and Christine Duenas were later interviewed. Based on their statements, the earlier arrest of Mr. Francisco, and evidence gathered at the scene of the pullover, including evidence obtained from the bags in the trunk, a federal search warrant was obtained to search Mr. Francisco's residence, where items were found consistent with a drug lab and the manufacturing of methamphetamine.

On December 3, 2007, the Defendant filed the instant Motion to Suppress. *See* Docket No. 29. On December 10, 2007, the Government filed its Opposition to the Motion. *See* Docket No. 34. On January 11, 2008, the Defendant filed her Reply to the Opposition. *See* Docket No. 45.

### DISCUSSION

The Defendant argues that suppression of evidence seized from the belongings in the trunk of the Miata is warranted because the search of her bags was not supported by probable cause nor did the officers have her consent to search her belongings. The issue counsel brought before the Magistrate Judge was "whether a third party, [Mr.] Ulloa, can consent to a search of a passenger['s], [Ms.] Fortner's, purses and a bag located in the trunk of the Miata." *See* Docket No. 29, at p. 4, Motion. Concerning the issue of third party consent, the Magistrate Judge agreed with the Defendant and found that once Mr. Ulloa informed Sargent Santos that all the belongings in the trunk belonged to the Defendant, the search should have immediately stopped. However, the Magistrate Judge went on to find that the search could be justified on the basis of probable cause. The Defendant maintains that the Magistrate Judge incorrectly decided this issue.

The Fourth Amendment restrains the government from performing "unreasonable searches and seizures." U.S. CONST. amend. IV. The touchstone in evaluating the permissibility of any search is "reasonableness." *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709

(1987). In most cases, reasonableness requires a warrant and probable cause. *Id.* Probable cause exists when, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Id*. at 232. In determining the existence of probable cause, the court is entitled to rely upon the training and experience of police officers. *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995) (citing *United States v. Arrellano-Rios*, 799 F.2d 520, 523 (9th Cir. 1986) ("The experience of a trained law enforcement agent is entitled to consideration in determining whether there was probable cause.").

The Defendant parses out each of the facts relied upon the Magistrate Judge to argue that probable cause was lacking. She argues that the facts independent of each other and collectively simply do not constitute probable cause. This court disagrees.

The Magistrate Judge found that:

> Sergeant Santos knew that Ms. Fortner's boyfriend (Mr. Francisco) had just been arrested a few hours before the search at issue here for possession of methamphetamine. He knew that Mr. Francisco had placed a call to Ms. Fortner. He also knew that Mr. Ulloa was previously involved in a narcotics investigation. From his experience and training, Sergeant Santos knew that contraband was commonly hidden in containers in vehicles, including the trunk. He was also aware of the ingredients and equipment used in the manufacturing of methamphetamine, to include items such as Drano and cooking pots. The possession of these everyday items may not cause concern in the average citizen, but given the totality of the circumstances and the training and experience of the officers, the court finds that the police had probable cause to continue searching Ms. Fortner's bags. Accordingly, the court finds nothing illegal in the search of Ms. Fortner's bags or the subsequent investigation that stemmed therefrom.

Docket No. 47, p. 11, January 31, 2008 Report and Recommendation.

This court finds that under the totality of the circumstances the Officers had sufficient information on which to base probable cause and to continue the search. Upon opening the first bag which was hot to the touch, items were observed which are commonly used in the manufacture of methamphetamine. Combined with the other facts discussed above, there seems little doubt that Sargent Santos had reason to believe that criminal activity was afoot. Accordingly, the Magistrate Judge properly denied the Defendant's Motion to Suppress evidence obtained from the search of the vehicle.

## Conclusion

The court hereby affirms the Findings of Fact and Legal Conclusions as set forth in the Magistrate Judge's Report and Recommendation and hereby enters an order denying Ms. Fortner's Motion to Suppress in its entirety. The parties shall appear before this court for a status hearing on April 7, 2008 at 1:30 p.m. in order to set trial in this matter.

**So Ordered.**

/s/ Frances M. Tydingco-Gatewood
   Chief Judge
Dated: Apr 03, 2008